IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHWEST ENVIRONMENTAL ADVOCATES, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>            Defendant. | No. C 01 - 1297 MJJ<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFFS** |

## INTRODUCTION

Plaintiffs Northwest Environmental Advocates, Center for Marine Conservation, and San Francisco Bay Keeper (collectively "Plaintiffs") moved for summary judgment against Defendant United States Environmental Protection Agency ("EPA"). The EPA made a cross motion for summary judgment. These motions require the Court to determine whether the EPA violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-706, by failing to issue a final response to Plaintiffs' petition seeking a repeal of 40 C.F.R. § 122.3(a) for over two years. Having considered the papers, and having heard the parties at oral argument, the Court GRANTS Plaintiffs' motion for summary judgment.

## FACTUAL BACKGROUND

This action arises from the EPA's failure to provide Plaintiffs with a final response to their January

13, 1999 petition for the repeal of 40 C.F.R. § 122.3(a) ("Section 122.3")[1] which exempted the need for permits from the National Pollutant Discharge Elimination System ("NPDES") for the discharge of ballast water[2] from vessels. *See* Complaint, Exh. A and ¶ 31. Failure to timely respond to petitions violate the APA, and on that basis, Plaintiffs seek declaratory relief that the EPA violated the APA. *See id.* at ¶ 32 (requesting the Court "[d]eclare that EPA's failure to act on Plaintiffs' petition violates [the APA], and constitutes agency action unlawfully withheld and/or unreasonably delayed pursuant to section 706(a) of the APA. 5 U.S.C. § 706(a)."). Plaintiffs further seek injunctive relief compelling the EPA to respond to Plaintiffs' petition within thirty (30) days of this Court's order. *See id.* at ¶ 33 (requesting the Court "[o]rder injunctive relief compelling the EPA to respond to the Plaintiff's petition within 30 days of the date of this Court's order . . . .").

Plaintiffs now move for summary judgment. Plaintiffs contend that Section 122.3, by exempting vessels from obtaining NPDES permits to discharge ballast water, should be repealed because it is not authorized by the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. *See* Plaintiffs' Motion for Summary Judgment ("Motion") at 8:22-9:6. Specifically, ballast water contains both biological materials such as bacteria, viruses and various other larger species, and pollutants, such as oil, chipped paint, sediment and toxins. *See id.* Vessels discharging ballast water without NPDES permits violate the CWA, which specifically prohibits the discharge of, among other things, biological materials and pollutants from vessels absent permit. *See id.* In addition, according to Plaintiffs, Section 122.3 runs counter to the holding in *Natural Resources Defense Council v. Costle*, 568 F.2d 1369 (D.C. Cir. 1977) in which the D.C. Circuit found that Congress expressly prohibited the EPA from exempting classes of discharges from the requirement to obtain an NPDES permit. *See Costle*, 568 F.2d at 1377 (finding that "the wording of the [CWA], legislative history, and precedents are clear: the EPA Administrator does not have authority to exempt categories of point sources from the requirements of the [NPDES].").

Plaintiffs contend that the question of whether the CWA authorizes Section 122.3 is a matter of

---

[1] 40 C.F.R. § 122.3 states, in relevant part: "[t]he following discharges do not require [National Pollutant Discharge Elimination System ("NPDES")] permits (a) Any discharge of sewage from vessels, effluent from properly functioning marine engines, laundry, shower, and galley sink wastes, or any other discharge incidental to the normal operation of a vessel."

[2] Ballast water refers to water taken on or discharged by a ship to accommodate the changes in the ship's weight as its cargo is loaded and unloaded.

2

1  law.  As such, the fact that the EPA has not provided Plaintiffs with a response after nearly three years,
2  taken together with evidence that the discharging of ballast water has harmful effects on the environment[3]
3  and human health,[4] is unreasonable and in violation of the APA.
4     The EPA opposes Plaintiffs motion and makes a cross-motion for summary judgment, arguing
5  essentially that the delay is not unreasonable where, as here, a response to Plaintiffs' petition involves the
6  consideration of various complicated legal, scientific, technical and policy issues in that Plaintiffs do not seek
7  an advisory opinion but instead seeks to repeal a regulation.  In addition, the EPA states that it has taken
8  affirmative steps in evaluating the various implications of repealing Section 122.3, the study for which was
9  memorialized in the draft report it produced for public comment on or about September 10, 2001.  *See*
10 The EPA's Opposition and Cross Motion ("Opposition"), Exh. A (Aquatic Nuisance Species in Ballast
11 Water Discharges:  Issues and Options, 66 Fed. Reg. 49,381-49,382 ("Draft Report")); *see also* Motion,
12 Exh. B (attaching same).  It is on that basis that the EPA claims that its failure to provide Plaintiffs with an
13 answer to their petition after more than two years does not violate the APA.

## LEGAL STANDARD

15 Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving
16 party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c).  The moving party bears the initial
17 burden of establishing that there is no genuine issue of material fact.  *Id.*; *Celotex Corp. v. Catrett*, 477
18 U.S. 317, 322 (1986).

---

[3] The EPA is in agreement with Plaintiffs as to the effects of the discharging of ballast water.  Specifically, through its study in response to Plaintiffs' petition, the EPA determined that various marine species hitchhike around the globe in the ballast water of cargo ships.  *See* Opposition at 1, n.1; *see also* Motion, Exh. B (Aquatic Nuisance Species in Ballast Water Discharges:  Issues and Options, 66 Fed. Reg. 49,381-49,382 ("Draft Report")) at 4-6.  When discharged, the species in the ballast water have the potential for invading and destroying habitats of native species.  *See id.*  Indeed, the threat to the environment and the economy from the introduction of these species is well established for at least the San Francisco Bay region and the Great Lakes.  *See* Draft Report at 6.

[4] Plaintiffs claim that the ballast water threatens human health in that "unregulated ballast water discharges can expose people to bacteria and other pathogens that are dangerous to human, a health risk that continues as EPA refuses to respond to [Plaintiffs'] petition."  Motion at 19.  The EPA concedes only to the extent that there is a growing concern for the possibility of direct threats to human health from pathogens such as cholera in ballast water that was taken up in foreign ports.  *See* Draft Report at 6.

**ANALYSIS**

In considering whether the EPA's response to Plaintiffs' petition is unreasonably delayed, the Court must first determine what issue the petition raises. Plaintiffs assert that they only seek the repeal of Section 122.3 on the basis that it is unauthorized by the CWA, which prohibits the discharge ballast water from vessels absent NPDES permit. The EPA claims, however, that by seeking to repeal Section 122.3, Plaintiffs' petition requires consideration of various issues, including but not limited to, the impact of repealing the regulation and the alterative approaches to regulating the discharge of ballast water.

Having carefully considered the petition that Plaintiffs' filed, the Court finds that Plaintiffs do not seek clarification as to alternative methods by which the EPA can regulate the discharge of ballast water. Neither do they seek to know what the policy implications are of their position. Instead, Plaintiffs merely ask the EPA to repeal the regulation if it finds that it was unauthorized under the CWA.[5] The issue is one of pure law and, despite the EPA's arguments to the contrary, do not require the consideration of the various scientific, legal and policy issues raised and labored over in the Draft Report.[6]

The Court now turns to the issue of whether the EPA's failure to respond to Plaintiffs' petition for over two years is unreasonable and in violation of the APA.[7] In assessing whether relief under the APA is appropriate, the Ninth Circuit has adopted the factors enumerated in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC"):

> (1) the time agencies take to make decisions must be governed by a "rule of reason;" (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in

---

[5] Plaintiffs may already have their answer. Specifically, in its opposition and cross motion, the EPA argues that Section 122.3 is consistent with the CWA. *See* Opposition at 3:8 (stating that Section 122.3 is consistent with the CWA), 20: 11-13 (stating same). To the extent that it does, the EPA appears to have taken the position that it will not repeal Section 122.3 on the grounds urged by Plaintiffs in their petition, namely that the CWA does not authorize the EPA to promulgate regulation exempting certain conduct from the permit requirement of the NPDES. Such a conclusion, of course, would not preclude the EPA from then repealing Section 122.3 on other grounds.

[6] Confusing the matter, however, is the fact that Plaintiffs themselves seem to expand the scope of their inquiry by devoting much of their briefing to the issue of whether the CWA does in fact prohibit the discharge of ballast water without an NPDES permit. *See* Motion at 7-11; Reply Motion and Opposition to Cross Motion ("Reply") at 5-7 (countering the EPA's argument that Section 122.3 is consistent with the CWA).

[7] The APA requires that "[e]ach agency shall give an interested person the right to petition for the issuance, amendment or repeal of a rule." 5 U.S.C. § 553(e). The APA further provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If a petition is denied in whole or in part, the agency shall give the petitioner "prompt notice" of the denial. 5 U.S.C. § 555(e). Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at state; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80; *see Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting the *TRAC* factors). Relief under the APA is warranted where agency action has been delayed to such an extent as to frustrate the court's role of providing a forum for review. *See In re California Power Exchange Corp.*, 245 F.3d 1110, 1124 (9th Cir. 2001) (stating that relief under the APA is available in "certain limited circumstances" where an agency's delay in issuing a final order is so "egregious" as to warrant mandamus). With this standard in mind, the Court considers the relevant factors in turn below.

### 1. Timeliness: *TRAC* Factors One and Two

The timeliness of an agency action is governed by a "rule of reason." *See Independence Mining*, 105 F.3d at 507. Guidelines provided by the underlying statute, if any, should be considered in determining whether delay is reasonable. *See id.* Because the parties agree that the APA does not require the EPA to respond to Plaintiffs' petition within a certain time, the Court must determine whether the EPA's failure to either grant or deny Plaintiffs' petition to repeal Section 122.3 on grounds that it exceeds the scope of authority provided under the CWA renders the response untimely.

As discussed above, the issue here is a legal one, and only requires the EPA to determine whether the ability to regulate the discharge of ballast water fall within the scope of the CWA's permitting requirements. This is true despite the EPA's assertions that Plaintiffs' assertion "ignores the possibility that EPA could disagree with [Plaintiff's] conclusion 'that the CWA mandates EPA's regulation of ballast water discharges under the NPDES program,' yet still determine that it is appropriate to repeal [Section 122.3.]" EPA Reply to Cross Motion ("Cross Reply") at 2:14-20.

In its papers, the EPA has already argued that it believes that Section 122.3 is consistent with the CWA. That analysis would provide a basis for a denial of Plaintiffs' petition to repeal Section 122.3. Because the issue is a purely legal issue, the Court finds that the EPA's failure to respond is untimely.[8]

---

[8] The EPA cites to, among other cases, *In re Barr Lab., Inc.*, 930 F.2d 72 (D.C. Cir. 1991), for the proposition that Court should afford great deference to agencies in determining whether they are acting in a timely fashion absent a timetable or other factors counseling expeditious action. *See* Opposition at 10:9-11:10. The Court agrees with the main premise of these

5

1   These two factors, therefore, favor finding the EPA's failure to respond as of this date unreasonable.

### 2. Prejudice: *TRAC* Factors Three and Five

The Court finds that the interests are prejudiced by the delay where, as here, the failure of the EPA to issue a formal response has the same impact on the rights of the parties as a denial, without granting Plaintiffs the ability to seek judicial review. *See generally Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970) (finding that "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief."). Here, Section 122.3 is still in effect while the EPA investigates the regulatory impact of repealing the section and the alterative regulatory schemes available.

The fact that Section 122.3 remains unrepealed is the equivalent of Plaintiffs' petition having been denied. Specifically, ballast water is still being discharged without NPDES permit, harming, both parties agree, the environment. Both parties further agree, at least on some level, that there is a connection between the unregulated discharge of ballast water and public health concerns. As such, the Court finds these two factors favor finding the EPA's failure to respond as of this date unreasonable.

### 3. Effect of Expediting Action: *TRAC* Factor Four

The EPA contends that taking action on Plaintiffs' petition before the Draft Report was finalized and its findings were coordinate with the proper stakeholders would be "fruitless and potentially counter-productive." Opposition at 19:8-11; Cross Reply at 8:12-15. The EPA's contention is based upon its belief that the petition involves more than the legal issue it poses, but instead seeks the promulgation of an alternative scheme to regulate the discharge of ballast water. Because the Court does not agree with the EPA as to the scope of the petition, the Court does not find that there are any adverse effects to expediting action.

---

cases, namely that the courts are ill-suited to review the order or speed in which an agency performs its duties. *See id.* at 74 (finding that "respect for the autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities."). The EPA's reliance on the cases, however, are misplaced. Specifically, the cases cited by the EPA did not involve the delay in responding to a question of whether the agency had authority to promulgate certain regulations. Indeed, the statutory basis for the relevant agency's authority was not an issue in the cases cited by the EPA. *See e.g. id.* at 76 (allowing the Food and Drug Administration flexibility in the time it takes to evaluate generic drug applications); *see also Sierra Club v. Thomas*, 828 F.2d 783, 794-99 (D.C. Cir. 1987) (denying the plaintiffs' request that the EPA list strip mines as sources of fugitive emissions and thereby subjecting strip mines to regulations).

The Court is cognizant of the efforts made to date by the EPA to put in place a workable solution to the problem caused by the discharge of ballast water.  Likewise, it is mindful that courts have traditionally been "slow to assume command over an agency's choice in priorities."  However, Plaintiffs do not ask the EPA to implement a new statutory scheme regulating the discharge of ballast water.  Instead, they merely seek the opinion of the EPA as to whether the CWA precludes the EPA from having exempted the discharge of ballast water from the NPDES permit requirement.  Because Plaintiffs' petition does not involve the considerations the EPA now asserts prevent it from responding in a timely manner, and because Plaintiffs' interests are prejudiced, the nearly three years which have past without response to the legal question posed by Plaintiffs constitutes unreasonable delay.  Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment, and DENIES the EPA's cross motion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion and DENIES the EPA's cross motion.  Pursuant to Section 706(a) of the APA, the Court compels the EPA to either grant or deny the petition by resolving the issue of whether Section 122.3 is consistent with the CWA within thirty (30) days of this Order.

**IT IS SO ORDERED.**

Dated: January 30, 2002                          /s/ Martin J. Jenkins
                                                MARTIN J. JENKINS
                                                UNITED STATES DISTRICT JUDGE